UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

STEPHEN VOELTER,

   *Plaintiff*,

v.                                            Case No. SA-19-CV-00731-JKP

DAIMLER TRUCKS NORTH AMER-
ICA, LLC, GLENN COLLINS,

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Daimler Trucks North America (DTNA) and Glenn Collins's Motion for Summary Judgement and Plaintiff Stephen Voelter's Response. *ECF Nos. 93,100,103*. Upon consideration, the Court concludes Defendants' Motion for Summary Judgment shall be GRANTED.

**Undisputed Factual Background**

DTNA is a manufacturer of heavy trucks. DTNA leases a facility in Von Ormy, Texas, where it conducts quality checks and installs minor equipment, such as stickers and mirrors, on trucks manufactured offsite. Glenn Collins is employed by DTNA and serves as the "Shop Floor Supervisor" of DTNA's Von Ormy facility, and Alex Villareal is employed by DTNA and serves as Collins's assistant. Express Services, Inc. ("Express Services") is a staffing agency that provides temporary employees to fill positions at client companies.

On January 10, 2018, Express Services entered a "Staffing Agreement" signed by Glenn Collins as representative for Custom Truck Services. The "New Account Information" form which

accompanied the Staffing Agreement states the client as "Daimler dba Custom Truck Services" and lists the client address as the DTNA facility in Von Ormy.

Voelter, an Express Services employee, began working at the DTNA facility in Von Ormy in January 2018, under the terms of this Staffing Agreement.

The terms of the Staffing Agreement provide:

1. We hire associates as Express employees, and provide all wages, taxes, withholding, workers' compensation, and unemployment insurance. . . . We recruit and assign associates to you to perform the job duties you specify. You agree to notify us if those duties or the workplace of an associate changes. . . .
6. . . . . All services performed by our associates shall be under your direction, supervision and control and you shall be responsible for ensuring that the services meet your requirements. . . .
9. You supervise, direct, and control the work performed by Express associates, and assume responsibility for all operational results, including losses or damage to property or data in the care, custody, or control of an Express associate. You agree to indemnify and hold us harmless from any claims or damages that may be caused by your negligence or misconduct, and agree on behalf of *your* insurer(s) to waive all rights of recovery (subrogation) against *us*.

On February 7, 2018, Voelter was injured while installing a mirror on a truck at DTNA's Von Ormy facility. Collins backed a tow truck into the truck Voelter was working on, and the impact caused the hood to fall onto Voelter, pinning him. Voelter suffered injuries to his neck, back and ribs as a result.

Express Services and DTNA both subscribe to separate workers' compensation insurance policies. Voelter filed for workers' compensation benefits under Express Services's policy and received $7,000 benefits for impairment and $26,000 benefits for workers' compensation. Later, Voelter brought this lawsuit in Texas state court against DTNA and Collins asserting causes of action for negligence and gross negligence. Defendants removed the suit to this federal court based upon diversity jurisdiction and now seek summary judgment contending Voelter's exclusive remedy is his workers' compensation benefits received under Express Services's policy.

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)(internal citation omitted).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In its analysis of the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and

draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## Discussion

### A. Defendants' Summary Judgement Burden

#### 1. Arguments

Defendants contend they are entitled to summary judgment as a matter of law because the Texas Workers' Compensation Act's (TWCA) exclusive-remedy provision bars Voelter's tort claims asserted against them. Defendants contend Voelter was under DTNA's direct control and supervision at all times while working in its facility and at the time of the accident, and therefore, was its "employee" within the context of TWCA. Voelter's status as DTNA's employee under the TWCA invoked the exclusive-remedy provision therein. Because Voelter qualified as an employee of both Express Services and DTNA, and he chose to pursue workers' compensation benefits under Express Services' policy, this compensation is his exclusive remedy as a matter of law.

#### 2. Analysis

Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance who suffers a work-related injury. *Texas Workers' Compensation Act*, Tex. Lab. Code Ann. § 408.001(a) ("exclusive remedy provision"); *McQuagge v. Heil Trailer Intern. Co.*, 602 Fed. Appx. 977, 978 (5th Cir. 2015). An employee may have more than one employer for purposes of the TWCA. *McQuagge*, 602 Fed. Appx. at 979; *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 139-40 (Tex. 2003). Under this exclusive-remedy provision, where an employee of a staffing provider works under the direction and control of the staffing

provider's client and both employers maintain workers' compensation policies, the employee may pursue benefits from either, but those benefits pursued will be his exclusive remedy. *McQuagge*, 602 Fed. Appx. at 980; *Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 277-78 (Tex. 2021); *Wingfoot Enters.*, 111 S.W.3d at 142–43. Consequently, the TWCA exclusive-remedy provision precludes an employee who pursues workers' compensation through one employer from asserting common-law negligence claims against another employer, unless this other employer elected not to subscribe to workers' compensation insurance. *McQuagge*, 602 Fed. Appx. at 979-80; *Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 277; *Wingfoot Enters.*, 111 S.W.3d at 142–43.

In a recent decision, the Texas Supreme Court determined the issue whether an injured employee of a temporary agency could proceed with a tort claim against the client defendant, who argued the worker qualified as its employee under the Workers' Compensation Act. *Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 276. In this factual scenario, when determining whether an employee of a temporary employment agency, such as Express Services, is also the employee of the client employer, here DTNA, the test is whether the client employer has the right to control the progress, details, and methods of operations of the work. *Id.* at 279; *see also McQuagge*, 602 Fed. Appx. at 979-80. The court must look to the extent to which the plaintiff worker's and the client party's "conduct at the jobsite demonstrated the client's right to control the plaintiff's daily work." *Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 279. To determine the meaning of "right to control" in this dual-employee context, a court must focus on "the factual question of who exercised the right to control as a practical matter in the course of the employee's daily work." *Id*.

Following this guidance, to be entitled to summary judgment under the TWCA exclusive remedy provision, DTNA must show Voelter was its employee. To do so, DTNA must show the

undisputed facts demonstrate it held the right to control the progress, details, and methods of operations of Voelter's day-to-day activities at the time he was injured. *See id*. at 279; *see also McQuagge*, 602 Fed. Appx. at 979. To support its argument, DTNA presents the "Staffing Agreement" signed by Express Services, Inc. and Glenn Collins for Custom Truck Services described above, as well as Voelter's and Collins's depositions.

The Staffing Agreement clearly states all services performed by Voelter shall be under "your direction, supervision and control and you shall be responsible for ensuring that the services meet your requirements," and "[y]ou supervise, direct, and control the work performed by [Voelter], and assume responsibility for all operational results." *ECF No. 93-3*.

In his deposition, Voelter admits DTNA held the right to control his daily activities, and he was under the direct supervision and control of DTNA at the time of the accident in the following colloquies:

> Q: And who – how did you get your instruction when you showed up to – to know to do that?
> A: Alex. . . .
> Q: He told you what to do?
> A: He told us what to do. Or Glenn would tell us in the morning.

*ECF No. 93-2*, *p. 92: 17-23*.

> Q: . . . on the day of the accident, you were assigned to do what?
> A: We—I was assigned to put on the mirrors
> Q: By Alex?
> A: By Alex, Alex and Glenn.

*ECF No. 93-2, p.93: 6-10.*

> Q: So you were just mounting two mirrors per truck?
> A: That's all I was doing that day.
> Q: Okay. So after you got done, the mirror on truck 1 in Bay 1, you'd go to a different truck?
> A: I'd go to a different truck, if – if we had – if we had another truck to do. Or I would do something else, whatever they wanted me to do.
> Q: Okay. And who is they?
> A: Alex and Glenn

*ECF No. 93-2*, p. 94:9-17.

Voelter then states that on the day of the accident he put mirrors on a truck in Bay 1, "[a]nd then Alex told me to go over and put the mirrors on this truck" in Bay 2. *ECF No. 93-2, p. 125 3-7*. In his Accident Report, Voelter states, "At 10:30 Alex told me to go put mirrors on a truck in the passenger side. . . . *ECF No. 93-7*.

In his deposition, Glenn Collins stated "there was always a meeting in the morning. So everybody knew where – what – who was in what bay … So there was always a meeting of who was doing what." *ECF No. 93-1, p. 45:10-12,24-25*. Collins stated he supervised the employees from Express Service and gave them job assignments daily. *ECF No. 93-1, p. 24:7-23, 58:16-23*.

As in *Waste Management*, this evidence demonstrates Express Services and DTNA intended Voelter to be under DTNA's direct supervision and control, that is, these parties intended DTNA to have the right to control the progress, details, and methods of operations of Voelter's work. Voelter, himself, admitted his daily activities were directed and controlled by DTNA supervisors. Even without the express provisions of the Staffing Agreement, the consistent testimony regarding the daily relationship between DTNA supervisory employees and Voelter at the DTNA facility demonstrate Voelter was DTNA's employee in the context of the TWCA exclusive-remedy test. *See Waste Mgmt. of Tex., Inc.,* 622 S.W.3d at 279-80.

Based upon this summary judgment evidence, Defendants satisfied their summary judgment burden to demonstrate the absence of a genuine dispute of material fact whether Voelter was DTNA's employee at the time of the accident, and consequently, the appropriateness of judgment as a matter of law pursuant to the TWCA's exclusive-remedy provision.

**B. Voelter's Response**

The burden shifts to Voelter to identify specific evidence in the record and articulate the precise manner in which this evidence raises a genuine dispute of material fact. *See Ragas*, 136 F.3d at 458.

1. **Arguments**

First, Voelter contends DTNA was not a party to the subject Staffing Agreement which Defendants present as the controlling document to prove the two employers intended Voelter to be under DTNA's supervision and control. Because DTNA was not a party to the contract, it necessarily cannot use the document to demonstrate it exercised "contractual control" over Voelter.

Second, Voelter contends a genuine dispute of material fact exists whether he was an employee of DTNA at the time of the accident because he was paid and employed by Express Services, and DTNA failed to comply with the duties of an employer under the TWCA to invoke the exclusive remedy protection. For these reasons, Voelter contends DTNA cannot demonstrate it exercised "actual control" over Voelter to invoke the exclusive-remedy provision under the TWCA.

Based upon these arguments, Voelter contends he presents a genuine dispute of material fact whether he qualifies as DTNA's employee within the context of the TWCA. Consequently, the exclusive-remedy provision does not automatically preclude him from suing DTNA for state-law tort claims as a matter of law. Voelter contends a jury must determine the factual dispute whether he was an employee of DTNA.

2. **Analysis**

**(1) Whether Voelter was under the "contractual control" of DTNA**

In support of his argument refuting summary judgment, Voelter contends the Staffing Agreement cannot establish any "contractual control" because DTNA is not a party to the contract. Voelter contends the Staffing Agreement is a contract between "Custom Truck Services" and Express Services, only. Further, Voelter argues Custom Trucks has no legal status in Texas because the name "Custom Truck Services" is not registered with the Texas Secretary of State as a legal entity or a "d/b/a" of any legal entity. Because the face of the contract shows DTNA is not a party as a matter of law, Voelter argues Defendants cannot establish Express Services intended DTNA to have "contractual control" of Voelter.

The face of the contract at issue shows Glenn Collins signed on behalf of "Custom Truck Services." The "New Account Information" form submitted at the same time shows the client to be "Daimler dba Custom Truck Services" and the client address to be DTNA's Von Ormy facility. The deposition testimony conclusively shows the Von Ormy facility operated by DTNA was known as "Custom Trucks", and the parties, including Voelter, operated under this understanding. In his deposition, Voelter referred to the facility where he performed work and where he was injured as the "Custom Trucks" facility. *ECF No. 103-1, p.78 16-25*. The undisputed summary judgment evidence establishes the facility known as "Custom Trucks" was leased and operated by DTNA. *ECF No. 93-10.* Glenn Collins testified and attested by Declaration that he was directed to sign the subject Staffing Agreement by his employer, DTNA, to secure temporary staff to perform work for DTNA Custom Trucks facility in Von Ormy. *ECF No. 93-3.*

Under Texas law, "[t]he designation 'doing business as' or 'd/b/a' is merely a descriptive indication of a person or corporation that does business under some alternative name." *Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 688 n.5 (5th Cir. 2007); *Thiesen v. Royal Neighbors of Am.*, 6:10-CV-496, 2010 WL 11556549, at *4

(E.D. Tex. Nov. 23, 2010). Thus, the use of a fictitious name does not create a separate legal entity. *Thiesen*, 2010 WL 11556549, at *4 (quoting *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 634 n.2 (4th Cir. 2002)). While a business must register a "d/b/a" or assumed name, the failure to so comply does not impair the validity of any contract. Tex. Bus. & Com. Code Ann. §§ 71.101, 71.201(a); *see also Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 482 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In addition, the Texas Supreme Court instructs, "[r]ather than focus on the legal question of who had the contractual right to control the plaintiff's work," the Court's primary focus should be "the parties' daily relationship on the job—to whether the plaintiff was 'in the service of' the defendant, as the Act puts it—not to contractual arrangements between the staffing agency and the client company." *See Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 282. The result should not turn on the contractual relationship between the staffing agency and its client, but instead, upon examination of the parties' conduct at the jobsite. *Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 279-80.

Here, the undisputed summary judgment evidence demonstrates the Staffing Agreement controlled the parties' actions in this case, and the parties all considered this Agreement to be the authorization and basis for Voelter's work for DTNA at the Von Ormy facility. The undisputed evidence demonstrates the name "Custom Trucks" was for identification, only, and was the name under which DTNA conducted its operations in the Von Ormy facility.

Voelter failed to dispute or dispel the validity of this contract as a matter of law to preclude its consideration. Consequently, Voelter failed to present a genuine dispute of material fact whether DTNA is a party to the subject contract. Further, these arguments do not raise a genuine dispute of material fact whether DTNA exercised supervisory control over Voelter at the time of

the accident to dispel application of the exclusive-remedy doctrine under the TWCA. Accordingly, this Court will examine the Staffing Agreement as competent evidence in conjunction with other arguments and evidence in consideration of the Motion for Summary Judgment. *See Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 279-82.

**(2) Whether Voelter was under the "actual control" of Daimler Trucks**

In support of his summary judgment argument, Voelter contends DTNA's evidence is not sufficient to establish "actual control" because Defendants fail to show DTNA engaged in any of the traditional activities of an employer. Voelter contends Defendants present no clear and convincing evidence and have no records showing DTNA ever trained Voelter; Defendants have no records DTNA controlled Voelter's specific work; Defendants have no records DTNA ever provided Voelter with any safety training; after Voelter's injury, DTNA failed to comply with its duties under the TWCA as an employer, and; Voelter received workers' compensation benefits from Express Services, not DTNA.

These arguments and indications of lack of evidence do not pertain to the Court's determination whether Voelter was DTNA's employee for purposes of the TWCA exclusive remedy provision. *See Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 279-82. The TWCA exclusive-remedy test is whether DTNA had the right to control Voelter's day-to-day activities, not whether it engaged in any of the traditional activities of an employer. *See id*. Nor do Voelter's arguments and evidence presented pertain to or present a genuine dispute of material fact on the issue whether DTNA held the right to exercise control over his daily activities to qualify as an employer under the TWCA. The fact that the client party did not directly employ the injured worker provided by the staffing agency does not factor into the analysis whether the worker is an employee of the client party. *Id*. at 279. Instead, the court must examine the parties' conduct at the jobsite. *Id*.

12

Voelter failed to raise a genuine dispute of material fact as to whether DTNA had the right to exercise "actual control" over his daily activities and his work at the time of the accident. Although Voelter points to several indicia that Express Services retained some control over his working relationship with DTNA, such as it paid his wages and provided the workers' compensation benefits, these arguments were dispelled in *Waste Management*. *Id*. at 279-82. Consequently, the arguments and evidence Voelter presents do not suggest Express Services exercised any control over the day-to-day details of Voelter's work or the manner in which he performed his work for DTNA. Nor do the evidence or arguments raise a genuine dispute of material fact whether DTNA exercised supervisory control over Voelter's daily work and actions.

The evidence consisting of the Staffing Agreement and Voelter's and Collins's depositions are clear and undisputed that at the time he was injured, Voelter was performing DTNA's work, at DTNA's facility, and was under the instruction and supervision of DTNA's employees Glenn Collins and Alex Villarreal. As a result, as a matter of law, Voelter's exclusive remedy for recovery due to this work-related accident was the workers' compensation benefits he recovered under Express Services's policy. *See McQuagge*, 602 Fed. Appx. at 980. As a matter of law, because DTNA has workers'-compensation insurance, and Voelter's exclusive remedy is the workers' compensation benefits he received under Express Services's policy, he is barred from pursuing the asserted tort remedies against DTNA. *See* Tex. Lab. Code Ann. § 408.001(a); *McQuagge*, 602 Fed. Appx. at 978.

## Conclusion

For the reasons stated, Defendants are entitled to a summary judgment precluding Voelter's tort claims asserted against them. Defendants' Motion for Summary Judgment is GRANTED. Voelter shall take nothing against Defendants in this action, and the claims asserted are DIS-

MISSED WITH PREJUDICE to their refiling. A final judgment consistent with this opinion will issue this same day.

It is so ORDERED.
SIGNED this 2nd day of July, 2021.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE